UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENDALL DONALDSON,

                  Petitioner,

v.                                   CASE NO. 08-11144
                                   HONORABLE ARTHUR J. TARNOW

CARMEN PALMER,

                  Respondent.

_____/

**OPINION AND ORDER**
**(1) DENYING THE HABEAS CORPUS PETITION,**
**(2) GRANTING IN PART A CERTIFICATE OF APPEALABILITY**
**(3) GRANTING PETITIONER'S MOTION TO FILE**
**INSTANTER HIS SUPPLEMENTAL BRIEF, AND**
**(4) DENYING PETITIONER'S MOTION**
**FOR IMMEDIATE RELEASE FROM CUSTODY**

This matter is pending before the Court on petitioner Kendall Donaldson's habeas corpus petition under 28 U.S.C. § 2254. Also pending before the Court are Petitioner's motion to file instanter a supplemental brief and his motion for immediate release from custody. The habeas petition challenges Petitioner's Wayne County convictions for armed robbery, assault with a dangerous weapon (felonious assault), felon in possession of a firearm, and possession of a firearm during the commission of a felony. Petitioner claims that the prosecutor committed misconduct, the pretrial identification procedure was defective, trial and appellate counsel were ineffective, and there was insufficient evidence to convict him of armed robbery.

Respondent argues in an answer to the petition that several of Petitioner's claims are procedurally defaulted and that the remaining claims lack merit. Procedural default is not a

*Donaldson v Palmer*, 08-11144

jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and the Court has determined that Petitioner is not entitled to the relief he seeks. Consequently, the Court will adjudicate Petitioner's claims on their merits rather than analyze whether they are procedurally defaulted. The habeas petition and motion for immediate release from custody are denied. The motion to file instanter a supplemental brief is granted, and the supplemental brief filed on January 5, 2011, has been considered.

## I. Background

### A. The Charges, Trial, and Sentence

This case arises from two robberies that occurred in Detroit early on October 3, 2002. The first robbery occurred at the Deluxe Coney Island restaurant at 12:34 a.m. that day. The Court will refer to this robbery as the Coney Island robbery. Petitioner was charged in the Coney Island case with two counts of armed robbery, one count of felon in possession of a firearm, and one count of possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm). The victims were Ben Robinson and Charles Giles.

The second robbery occurred at a night club known as the Gold Coast Lounge, which was located about half a block away from the Deluxe Coney Island restaurant. The Court will refer to this robbery as the Gold Coast robbery. For this robbery, Petitioner was charged with two counts of armed robbery, one count of assault with intent to commit murder, one count of felon in possession of a firearm, and one count of felony firearm. The victims were John Pierce and Eugene Szymanski.

2

*Donaldson v Palmer*, 08-11144

Petitioner was tried jointly with his co-defendant, Darrell Solomon, but before a separate jury.[1]  The prosecutor's theory was that, within a period of fifteen minutes, Petitioner robbed the Coney Island restaurant, went next door and robbed the Gold Coast Lounge, rode down the street in a vehicle, and was standing in front of another Coney Island restaurant when the police observed him and proceeded to arrest him.  Petitioner's defense was that he was mis-identified as one of the robbers of the Coney Island victims and that it was physically impossible for him to commit the Gold Coast robbery because he was already in police custody for the Coney Island robbery when the Gold Coast robbery occurred.

The evidence at trial established that two men took money and credit cards from Ben Robinson and Charles Giles at the Coney Island restaurant on Seven Mile Road in Detroit at 12:34 a.m. on October 3, 2002.  Both robbers were armed, and they wore panty hose over their faces.  They were accompanied by a third man, who remained at the door of the restaurant.  Ben Robinson was seated with his back to the door when the robbers entered the restaurant.  He was unable to identify Petitioner in a photographic array, but he testified at trial that he thought the two defendants were the people who robbed him.  Charles Giles was seated facing the door of the restaurant, and he identified Petitioner in both the photographic array and at trial as one of the robbers.

On the same night, John Pierce and Eugene Szymanski were working outside the Gold Coast Lounge when two men approached Pierce and Szymanski and inquired about the Lounge.

---

[1]  Solomon was not charged with any offenses related to the Gold Coast robbery.

3

*Donaldson v Palmer*, 08-11144

As Petitioner pulled out a handgun, Szymanski threw a flashlight at him.  Petitioner shot Szymanski in the abdomen and took over a thousand dollars from Pierce.

The timing of the second robbery was in dispute.  Police officer Laron Simmons testified at trial that he received a call about the Gold Coast robbery about 1:30 a.m. on October 3, 2002. John Pierce initially told the police that the robbery occurred approximately 2:30 a.m., but at trial, he claimed that he could have wrong by as much as an hour.  Eugene Szymanski informed the police that the robbery occurred around 1:45 a.m., and at the preliminary examination, he testified that the robbery occurred between 2:00 and 3:00 a.m.  At trial, however, he maintained that the robbery occurred before 1:00 a.m.

Petitioner was arrested a mile or two from the scene of the robberies after the police observed two men fitting the description given of the robbers.  The police chased Petitioner on foot.  They lost sight of him briefly and then found him hiding under a vehicle.  One officer testified that Petitioner was arrested at 12:40 or 12:45 a.m.  Three other police officers testified that Petitioner was arrested between 12:55 a.m. and 1:15 a.m.  After the arrest, an officer drove Petitioner back to the Coney Island restaurant and transferred him to another squad car where Darrell Solomon was seated.  Petitioner informed the officers that his name was Jeffrey Cope.

According to Police Officer Samuel Dunnigan, Petitioner was inattentive during a subsequent custodial interview.  Petitioner kept trying to hear what was being said in the next room where Darrell Solomon was being interviewed.  After the interview, Petitioner barged into the room where Solomon was being interviewed and told Solomon not to say anything because the police were trying to "railroad" him.

4

*Donaldson v Palmer*, 08-11144

Solomon implicated Petitioner and himself in the Coney Island robbery during his interview with the police, but he claimed at trial that he had told the officers what they wanted to hear because he was promised release if he implicated Petitioner.  Solomon and Petitioner testified at trial that they were elsewhere at the time of the robberies and did not commit the charged offenses. They also denied knowing each other before their arrests.

On March 6, 2003, a Wayne County Circuit Court jury found Petitioner guilty of:  (1) four counts of armed robbery, Mich. Comp. Laws § 750.529; (2) two counts of felony firearm, Mich. Comp. Laws § 750.227b; (3) two counts of felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and (4) one count of felonious assault, Mich. Comp. Laws § 750.82, as a lesser-included offense of assault with intent to commit murder.  Petitioner was sentenced to two years in prison for the felony firearm convictions, followed by concurrent terms of fifteen to twenty-two and a half years for each armed robbery conviction,[2] three to five years for each felon-in-possession conviction, and two to four years for the felonious assault conviction.

**B.  The Appeals**

On appeal, Petitioner argued through counsel that (1) the trial court erred in failing to suppress evidence of a photographic line-up and (2) there was insufficient evidence to convict him of the Gold Coast robbery.  These claims constitute habeas claims three and six.  Petitioner raised three additional issues in a *pro se* supplemental brief:  (1) his trial attorney was ineffective

---

[2]  At sentencing, the trial court stated that the sentence for the armed robberies was fifteen to twenty-two and a half years.  The written judgment of sentence for the Gold Coast case indicates that the maximum sentence for the Gold Coast armed robberies is twenty-two years.

5

*Donaldson v Palmer*, 08-11144

for failing to obtain and introduce Eugene Szymanski's medical records for impeachment at trial on the assault charge and for failing to review a videotape of the Coney Island robbery before trial; (2) he was denied the assistance of counsel during a critical stage of the proceedings; and (3) the prosecutor allowed false testimony go uncorrected. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in an unpublished, per curiam opinion. *See People v. Donaldson*, Nos. 248597 and 248634, 2004 WL 2101736 (Mich. Ct. App. Sept. 21, 2004). On June 28, 2005, the Michigan Supreme Court denied leave to appeal, because it was not persuaded to review the issues. *See People v. Donaldson*, 472 Mich. 938; 698 N.W.2d 394 (2005) (table).

In 2006, Petitioner filed a *pro se* motion for relief from judgment in which he raised his remaining habeas claims. The trial court denied Petitioner's motion in a reasoned opinion, and the Michigan Court of Appeals denied leave to appeal the trial court's decision "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Donaldson*, No. 272647 (Mich. Ct. App. Apr. 20, 2007). On October 29, 2007, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Donaldson*, 480 Mich. 921; 740 N.W.2d 267 (2007) (table).

### C. The Federal Court Proceedings

On March 17, 2008, Petitioner filed a *pro se* habeas corpus petition in this Court, raising the following eight claims:

    I.    Petitioner was denied his right to a fair trial when the Prosecutor repeatedly commented on the witnesses' credibility, denigrating trial counsel['s] defense as a fabrication and calling Petitioner a liar.

*Donaldson v Palmer*, 08-11144

II.     Petitioner was denied his right to effective assistance of counsel when counsel failed to object to the Prosecutor's closing arguments.

III.    Petitioner was denied his right to due process when the trial court failed to suppress the pre-trial photographic line-up when Petitioner was in custody and available for a "live" line-up, where there was no basis for the officer's decision to show the victim Petitioner's photograph instead of Petitioner in person.

IV.     Petitioner was denied a fair trial when the Prosecutor knowingly suppressed or destroyed the 911 dispatch tapes that could have acquitted Petitioner of the Gold Coast Lounge robbery.

V.      The Petitioner was denied his Sixth Amendment right to effective assistance of counsel, when counsel failed to conduct an adequate pre-trial investigation by not demanding or reviewing the 911 transcripts that could have acquitted Petitioner of the "Gold Coast Lounge" robbery.

VI.     There was insufficient evidence to convict Petitioner of the "Gold Coast Lounge" robbery.

VII.    The Petitioner received ineffective assistance of counsel on appeal when counsel failed to raise the following issues outlined in this claim.

VIII.   Petitioner was denied his constitutional right under the Sixth Amendment when appellate counsel failed to argue and preserve the record where Petitioner was sentenced to facts not proven beyond a reasonable doubt by a jury.

Petitioner filed a motion for discovery and a motion for an evidentiary hearing with his habeas petition.  The Court denied the motion for an evidentiary hearing, but granted Petitioner's motion for discovery and ordered Respondent to attempt to locate the 911 dispatch tape for the Gold Coast robbery.

Petitioner subsequently moved to amend his discovery motion to include a copy of all police reports.  He also moved for appointment of counsel and to amend the pleadings to add evidence that he was booked at the Eleventh Precinct in Detroit at 12:45 a.m. on October 3,

7

*Donaldson v Palmer*, 08-11144

2002.  On May 21, 2009, the Court granted Petitioner's motions and appointed counsel to

represent him.

Respondent later informed the Court that the 911 tape for the Gold Coast robbery no

longer existed because the Detroit Police Department destroyed the tape after ninety days,

pursuant to departmental policy.  Petitioner then moved through counsel for additional records,

to expand the record, and for an evidentiary hearing.  The Court granted Petitioner's motions and

held an evidentiary hearing on November 15, 2010.  The parties have filed supplemental briefs,

and the case is now ready for disposition.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

*Donaldson v Palmer*, 08-11144

or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410-11.

## III. Discussion

### A. Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to convict him of the Gold Coast robbery, because the victims of that robbery stated to the police that the robbery occurred between 1:45 a.m. and 2:30 a.m., and Eugene Szymanski testified at the preliminary examination that the robbery happened between 2:00 and 3:00 a.m. Petitioner argues on the basis of the police officers' reports and testimony that he was in police custody for the Coney Island robbery by 1:30 a.m. at the latest and, therefore, he could not have committed the Gold Coast robbery. Petitioner also contends that the evidence was insufficient because the victims' description of the Gold Coast robbers did not match him or the description given of the Coney Island robbers. The Michigan Court of Appeals adjudicated Petitioner's claim on direct review and concluded that the evidence was sufficient to support the jury's verdict.

9

*Donaldson v Palmer*, 08-11144

The relevant question on review of a sufficiency-of-the-evidence claim is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal citation omitted) (emphasis in original).

**1. The Timing of the Gold Coast Robbery**

Petitioner is not alleging that the prosecutor failed to each element of the charged

offenses. Instead, he claims that the prosecutor failed to show that he was one of the Gold Coast

robbers. According to Petitioner, the testimony established that he was in police custody for the

Coney Island robbery before the Gold Coast robbery was committed.

Several police officers testified at trial that Petitioner was arrested between 12:40 a.m.

and 1:15 a.m. on October 3, 2002. *See* Tr. Feb. 24, 2003, at 170 (Officer Kyle Bryant's

testimony that Petitioner was arrested between 12:40 a.m. and 12:45 a.m.); *id*. at 207 (Officer

Daniel Bryant's testimony that Petitioner was arrested about 12:55 a.m. or 1:00 a.m.); *id*. at 193

(Officer Tarek Bazzi's testimony that Petitioner was arrested about 1:00 a.m.); *id*. at 154 (Officer

Kory Karpinsky's testimony that Petitioner was arrested about 1:15 a.m.). Eugene Szymanski

initially informed the police that the Gold Coast robbery occurred about 1:45 a.m., and at the

preliminary examination, he stated that the crime occurred between 2:00 and 3:00 a.m. on

October 3, 2002. (Tr. Dec. 30, 2002, at 4, 8.) John Pierce informed the police that the robbery

occurred about 2:30 a.m. Thus, there is some basis for Petitioner's claim that he could not have

10

*Donaldson v Palmer*, 08-11144

committed the Gold Coast robbery.  The victims' statements to the police and Eugene

Szymanski's testimony at the preliminary examination indicated that the Gold Coast robbery

occurred after Petitioner's arrest.

At trial, however, John Pierce testified that he could have been wrong about the time of

the robbery by as much as an hour.  Eugene Szymanski claimed that the robbery actually

occurred before 1:00.  The jury could have reasoned that Pierce and Szymanski initially were

mistaken about the time of the robbery and that, if Szymanski's testimony were correct,

Petitioner could have committed the Gold Coast robbery before he was arrested.  Although

Police Officer Lavon Simmons testified that he was dispatched to the Gold Coast Lounge at 1:30

a.m., it is possible that the robbery was not immediately reported to the police.  John Pierce

testified that the police arrived twenty minutes after the robbers left the scene.  (Tr. Feb. 25,

2003, at 20, 31.)

The jury also could have concluded that the eyewitnesses' identification of Petitioner as

one of the robbers was trustworthy, despite discrepancies in the testimony about the timing of the

Gold Coast robbery and Petitioner's arrest.  Both Pierce and Szymanski identified Petitioner in a

photo array shortly after the crime, and Pierce claimed to have recognized Petitioner from an

encounter with him during the previous week.  An additional eyewitness, valet Donald Scott,

testified that he saw Petitioner shoot Szymanski and that he heard the taller robber tell Petitioner

to get the money.  He then saw Petitioner approach Pierce in the guard house.

The jury ultimately determined that the prosecution proved its case, and a reviewing

court must defer to the fact finder's resolution of conflicting inferences.  *Jackson*, 443 U.S. at

11

*Donaldson v Palmer*, 08-11144

319.  A reviewing court also must avoid weighing the evidence, evaluating the credibility of

witnesses, or substituting its judgment for that of the jury.  *United States v. Chavis*, 296 F.3d

450, 455 (6th Cir. 2002) (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994)).

"This standard places a 'very heavy burden' upon a defendant making a sufficiency of the

evidence challenge."  *Id.* (quoting *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000)).

Eyewitness testimony is sufficient to convict.  *United States v. Hayes*, 399 F. App'x 57,

59 (6th Cir. 2010) (finding eyewitness identifications of the defendant in a photographic line-up

and later in court sufficient evidence to convict) (citing *United States v. Caraway*, 411 F.3d 679,

682-83 (6th Cir. 2005), and *United States v. Tipton*, 11 F.3d 602, 609 (6th Cir. 1993)).  In fact,

"the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally

sufficient to support a conviction."  *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985) (citing

*United States v. Danzey,* 594 F.2d 905, 916 (2d Cir. 1979), *United States v. Smith,* 563 F.2d

1361, 1363 (9th Cir. 1977), and *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966)).

Here, three eyewitnesses identified Petitioner at trial as one of the Gold Coast robbers,

and two of those witnesses identified Petitioner before trial in a photographic array.  A rational

juror could have concluded from the evidence that Petitioner participated in the Gold Coast

robbery.  The evidence therefore was sufficient to sustain Petitioner's convictions for the Gold

Coast robbery and related offenses, and the state court's decision affirming Petitioner's

convictions was not contrary to, or an unreasonable application of, *Jackson*.

*Donaldson v Palmer*, 08-11144

### 2. The Descriptions of the Robbers

Petitioner alleges that the evidence was insufficient to sustain his convictions for the

Gold Coast robbery for an additional reason.  He claims that the victims' descriptions of the

robbers did not match him nor the description given of the Coney Island robbers.

The Michigan Court of Appeals described the discrepancies in the victims' descriptions

of the robbers as follows:

> In his police statement, Pierce described the first robber, i.e., Donaldson, as a
> black male, nineteen years old or in his early twenties, five feet and seven or eight
> inches tall, 175 to 180 pounds, medium brown complexion, with a "low fade"
> haircut.  Szymanski described Donaldson as five feet, nine inches tall, 150 to 175
> pounds, nineteen or twenty years old, medium complexion, with braided hair.  At
> trial, Szymanski acknowledged that Donaldson appeared heavier than his 150- to
> 175-pound estimate, and stated that his prior estimate of Szymanski's height was
> "an approximate." Giles described Donaldson as five feet and five or six inches
> tall, 160 pounds, and a light brown complexion.  At trial, Donaldson gave his own
> weight as 130 pounds, and his height as five feet, five inches.  There is no
> objective evidence as to Donaldson's weight on October 3, 2002, but
> [Investigator] Blanks testified that Donaldson was five feet, four inches tall.

*Donaldson*, 2004 WL 2101736, at *5.

Although the victims, for the most part, described Petitioner as being taller and heavier

than he apparently was at the time of the robberies, the Michigan Court of Appeals noted that the

witnesses

> generally agreed that the robber was a young adult, slim, shorter than average,
> with a medium complexion.  This general description is consistent with
> Donaldson's claim that the Department of Corrections describes him as "5'4", 145
> pounds," with a brown complexion.  The jurors had the opportunity to observe
> Donaldson and make their own determination as to whether the witnesses'
> descriptions and estimates of the robber's weight and complexion comported with
> Donaldson's appearance.  The jurors could have attributed any erroneous

13

*Donaldson v Palmer*, 08-11144

assessments of height and weight to the inherent difficulty of precisely
quantifying visual observations.

*Id*. at *6.

As further explained by the federal Court of Appeals for the Sixth Circuit in a similar

case about discrepancies in eyewitness descriptions of robbers,

[n]ot all people see and observe incidents and relate their impressions in the same
manner.  It would be unusual if they did.

The evidence must be viewed in the light most favorable to the Government.
*Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United
States v. Milby*, 400 F.2d 702 (6th Cir. 1968).  The credibility of the witnesses
was for the jury to determine.

*United States v. Moore*, 439 F.2d 1107, 1107-08 (6th Cir. 1971).

The Michigan Court of Appeals concluded in this case that "the discrepancies between

the witnesses' descriptions and Donaldson's actual characteristics d[id] not render the jury's

findings inherently implausible."  *Donaldson*, 2004 WL 2101736, at *6.  This Court agrees.

When viewed in the light most favorable to the prosecution, the evidence was sufficient to

support the jury's verdict on the Gold Coast case, despite discrepancies in the witnesses'

descriptions of the robbers.

**B.  Suppression of Evidence**

Petitioner claims that the trial prosecutor knowingly suppressed or destroyed evidence

pertaining to the Gold Coast robbery.  The evidence in dispute consists of the 911 dispatch tape

for the Gold Coast robbery, Eugene Szymanski's medical records, and the Eleventh Precinct's

booking records for October 3, 2002.  Petitioner maintains that this evidence would have

14

*Donaldson v Palmer*, 08-11144

supported his defense that he was in custody for the Coney Island robbery at the time of the Gold Coast robbery.  Petitioner claims that he could have used the undisclosed evidence to impeach the Gold Coast eyewitnesses' identification of him and to attack the prosecution's theory that whoever committed the Coney Island robbery also committed the Gold Coast robbery.

The state courts did not address Petitioner's claims about Eugene Szymanski's medical records and the Eleventh Precinct's booking records for October 3, 2002.  The trial court reviewed Petitioner's claim about the 911 dispatch tape in its order denying Petitioner's motion for relief from judgment.  According to the trial court, Petitioner's claim that the tape would have exonerated him was speculative when viewed in the light of the strong evidence of guilt.

### 1.  Supreme Court Precedent

The Supreme Court explained in *Brady v. Maryland*, 373 U.S. 83 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "[W]here there is a general request, or no

15

*Donaldson v Palmer*, 08-11144

request at all, for exculpatory evidence, suppression by the prosecutor of certain exculpatory evidence violates due process only where that evidence creates a reasonable doubt as to the guilt of the accused . . . ." *Wagster v. Overberg*, 560 F.2d 735, 740 (6th Cir. 1977).

### 2. Application

Petitioner's trial attorney testified at the evidentiary hearing in this Court that he did not recall requesting medical records or police records in an attempt to establish the time of the Gold Coast robbery. The trial court, however, entered a discovery order, which required the prosecution to provide defense counsel with all relevant physical or tangible evidence in the police department's custody.

### a. The Log-in Sheet, EMS Report, and Medical Records

The EMS report and Eugene Szymanski's medical records had limited value because they merely established that Szymanski was shot sometime before 2:25 a.m. on October 3, 2002, and examined at the hospital after 3:00 a.m. A precinct record, on the other hand, indicates that Petitioner was logged in at the police precinct under his alias, Terrence Cope, at 0045 military time, or 12:45 a.m., on October 3, 2002. *See* Dkt. #42, Ex. 5. Because John Pierce and Eugene Szymanski informed the police that the Gold Coast robbery happened an hour or more later, *see id.*, Ex. 2, the precinct record was potentially favorable evidence for Petitioner. Nevertheless,

> [c]ritical to *Brady* is the rule that:
>
> > *Brady* obviously does not apply to information that is not wholly within the control of the prosecution. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source,

16

*Donaldson v Palmer*, 08-11144

> because in such cases there is really nothing for the government to
> disclose.
>
> *Coe v. Bell*, 61 F.3d 320, 344 (6th Cir. 1998) (internal citations and quotations
> omitted).

*Owens v. Guida*, 549 F.3d 399, 415-16 (6th Cir. 2008), *cert. denied*, __ U.S. __, 130 S. Ct. 281

(2009).

Eugene Szymanski's medical records were not wholly in the control of the prosecution,

and Petitioner knew the essential facts permitting him to take advantage of the log-in sheet and

Fire Department's EMS report.  His trial attorney testified at the evidentiary hearing that he

could have filed a special motion to acquire physical evidence if the prosecutor did not give the

evidence to him voluntarily.  (Tr. Nov. 15, 2010, at 11.)  Thus, no *Brady* violation occurred as to

the log-in sheet, EMS report, and Eugene Szymanski's medical records.

### b.  The 911 Dispatch Tape

The 911 dispatch tape concerning the Gold Coast robbery no longer exists.  Thus, its

value is speculative.

The Court could construe Petitioner's claim to allege that the prosecution failed to

preserve the tape.  However, to prevail on such a claim, Petitioner would have to show that the

prosecution acted in bad faith by failing to preserve potentially useful evidence.  *Arizona v.

Youngblood*, 488 U.S. 51, 57-58 (1988); *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002).

Petitioner has failed to show that the police acted in bad faith by destroying the 911 dispatch tape

concerning the Gold Coast robbery.  The evidence apparently was destroyed after ninety days

*Donaldson v Palmer*, 08-11144

pursuant to the Detroit Police Department's standard policy. *See* Response to Order for Discovery [Dkt. #35].

To conclude, Petitioner has failed to demonstrate that the prosecution suppressed or willfully destroyed material evidence that was favorable to the defense. Therefore, his claim lacks merit and does not entitle him to habeas corpus relief.

### C. Alleged Ineffective Assistance of Counsel

In a related claim, Petitioner alleges that his trial attorney was ineffective for failing to conduct an adequate pre-trial investigation. Petitioner claims that his attorney should have demanded and reviewed (1) the 911 dispatch tape for the Gold Coast robbery, (2) Eugene Szymanski's medical records, and (3) the Eleventh Precinct's booking records for October 3, 2002. Petitioner points out that, although his attorney moved to quash the information on the ground that Petitioner was in custody at the time of the Gold Coast robbery, the attorney failed to obtain and introduce evidence supporting that argument at trial. Petitioner maintains that he could have been acquitted of the Gold Coast robbery if his attorney had demanded and reviewed the additional evidence. The trial court disposed of Petitioner's ineffective-assistance-of-counsel claim in summary fashion by stating that the claims underlying Petitioner's allegations about counsel were devoid of merit and that attorneys are not required to put forth frivolous arguments.

#### 1. *Strickland v. Washington*

Ineffective-assistance-of-counsel claims are held to the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that his attorney's performance was deficient. "This requires showing that counsel made errors so serious that

*Donaldson v Palmer*, 08-11144

counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment [to the United States Constitution]." *Id.* at 687. Petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Second, Petitioner must establish that counsel's deficient performance prejudiced his defense. *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 792 (2011) (citing *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 788 (internal and end citations omitted).

The alleged deficiency in this case is the failure to investigate and produce evidence. Counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that a particular investigation is unnecessary. *See Wiggins v. Smith* 539 U.S. 510, 521-23 (2003). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "The focus in failure-to-investigate claims, then, is the reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (citing *Wiggins*, 539 U.S. at 527). "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to

19

*Donaldson v Palmer*, 08-11144

investigate his options and make a reasonable choice between them.'" *Towns v. Smith*, 395 F.3d

251, 258 (6th Cir. 2005) (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)).  As

recently explained by the United States Court of Appeals for the Sixth Circuit,

> [c]ompetent counsel can be expected to undertake a "thorough investigation of
> law and facts relevant to plausible options" for the defense. [*Strickland*, 466 U.S.
> at 690, 104 S. Ct. 2052].  And while this does not require counsel to investigate
> every conceivable defense, any limitation on counsel's investigation must be
> supported by a "reasonable professional judgment[ ]."  *Id*. at 691, 104 S.Ct. 2052.
> . . .  To make a reasoned judgment about whether evidence is worth presenting,
> one must know what it says.  While the point of the Sixth Amendment is not to
> allow Monday-morning quarterbacking of defense counsel's strategic decisions, a
> lawyer cannot make a protected strategic decision without investigating the
> potential bases for it.  *See id*. at 690-91, 104 S.Ct. 2052; *see also Bigelow v.
> Haviland*, 576 F.3d 284, 288 (6th Cir. 2009).  It is particularly unreasonable to
> fail to track down readily available and likely useful evidence that a client himself
> asks his counsel to obtain.  *See Bigelow*, 576 F.3d at 287-88.

*Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011).

### 2.  Application

Petitioner testified at the evidentiary hearing in this Court that he informed his trial

attorney that he was in jail when the Gold Coast robbery happened and that he asked his attorney

to acquire the 911 records, Eugene Szymanski's medical records, and the precinct records.  (Tr.

Nov. 15, 2010, at 43, 46.)

### a.  The 911 tape and Medical Records

As noted above, the 911 dispatch tape for the Gold Coast robbery has been destroyed.

The tape might have helped Petitioner if it revealed that a call was made to the 911 emergency

operator after 1:15 a.m. on October 3, 2002, because police officers testified at trial that

Petitioner was in custody by then.

*Donaldson v Palmer*, 08-11144

It is mere speculation, however, that the tape would have shown that a 911 call was made after 1:15 a.m.  The tape could have revealed that the call was made before 1:15 a.m., thus making Petitioner's theory *less* plausible.

As for Eugene Szymanski's medical records and the EMS report, they do not prove that Petitioner was in custody before the Gold Coast robbery occurred.  They merely show that Szymanski was shot and injured before 2:25 a.m. on October 3, 2002, when the EMS crew was dispatched to the crime scene and that he was examined in the hospital after 3:00 a.m. Szymanski's injury was minor, and it is possible that the EMS unit was not immediately called to the crime scene.  Petitioner has not shown that he was prejudiced by defense counsel's failure to obtain the EMS report, medical records, and 911 tape.

### b.  The Booking Record

The Eleventh Precinct's booking record for October 3, 2002, indicates that Petitioner was logged in at the precinct at 12:45 a.m. that day.  This information supports Petitioner's theory that he was in custody by 1:00 or 1:30 a.m. and could not have committed the Gold Coast robbery.

### i.  Counsel's Performance

Defense counsel testified at the evidentiary hearing that he did not attempt to obtain physical evidence to support the defense theory because he thought that the police officers' testimony – that Petitioner was in custody by about 1:00 a.m. – was sufficient.  He did not anticipate that Eugene Szymanski would change his testimony about the timing of the robbery, and it did not occur to him to acquire any records during trial.  (Tr.

*Donaldson v Palmer*, 08-11144

Nov. 15, 2010, at 23-24.)

To his credit, trial counsel argued at the preliminary examination that Petitioner was in custody by 1:00 a.m. on October 3, 2002, and, therefore, he could not have committed the Gold Coast robbery between 2:00 and 3:00 a.m. as Eugene Szymanski had claimed.  (Tr. Dec. 30, 2002, at 13-14.)  Defense counsel raised the same argument in the trial court immediately before trial.  (Tr. Feb. 19, 2003, at 9-11.)   Counsel also raised the issue in his opening statement, in his cross-examination of witnesses, and in his closing argument.

It is only in hindsight that one can say the booking record would have been helpful.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland,* 466 U.S. at 689. Here, "[c]ounsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."  *Richter*, 131 S. Ct. at 789.  "There are . . . 'countless ways to provide effective assistance in any given case,'" and it is a rare situation "in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."  *Id*. at 788-89 (quoting *Strickland*, 466 U.S. at 689).

Petitioner's attorney may not be faulted for a lack of foresight in obtaining physical evidence to support his argument or for failing to prepare for what might have appeared to be remote possibilities.  *Id*. at 791.  The Court concludes that defense counsel's performance was

22

*Donaldson v Palmer*, 08-11144

not deficient.  He made a reasonable decision that he had sufficient evidence to support the defense theory and that further investigation of the facts was unnecessary.

### ii.  Prejudice

Even if trial counsel's performance were deficient, counsel's omissions in all likelihood did not prejudice the defense.  Although the deliberating jurors asked for information about the timing of the Gold Coast robbery (Tr. Mar. 4, 2003, at 26-28), the  booking record, showing that Petitioner was logged in at the precinct at 12:45 a.m., is not consistent with the other evidence.

A videotape of the Coney Island robbery, which was shown to the jury, demonstrated that the Coney Island robbery occurred at 12:34 a.m. on October 3, 2002, and that the robbers were present for thirty-five to forty seconds.  The Gold Coast Lounge was about half a block away, and the robbery there took place in less than five minutes.  (Tr. Feb. 25, 2003, at 63.)  The robbers were seen getting into a car after the robbery.  Petitioner was arrested about a mile or two away, and three of four police officers testified at trial that the arrest occurred between 12:55 a.m. and 1:15 a.m. *See supra* section III.A.1.  For the jurors to believe that Petitioner was logged in at the precinct by 12:45 a.m. on October 3, 2002, they would have had to disregard substantial testimony that Petitioner was not arrested until at least 12:55 a.m.  The jurors also would have had to ignore the eyewitnesses' testimony that Petitioner was one of the Gold Coast robbers.

Although Officer Kyle Bryant testified that Petitioner was arrested between 12:40 a.m. and 12:45 a.m., there was other evidence that Petitioner subsequently was driven back to the crime scene, placed in a different squad car, and taken to the Eleventh Precinct.  It is unlikely that all of this activity could have happened before 12:45 a.m. when Petitioner supposedly was

23

*Donaldson v Palmer*, 08-11144

logged in at the precinct.  Petitioner himself testified that it took a few minutes to get back to the
Coney Island restaurant after his arrest.  From there, he was transported to the precinct.

There is not a substantial probability that the booking record would have persuaded the
jurors to acquit Petitioner of the Gold Coast robbery, given the other evidence in the case.  The
Court finds that trial counsel made a reasonable investigation into the facts of Petitioner's case
and that his professional judgment supported the limitations on his investigation.  While he may
have made a mistake in thinking that he did not need physical evidence to support the defense
theory, "it is at least debatable whether counsel's error was so fundamental as to call the fairness
of the trial into doubt."  *Richter*, 131 S. Ct. at 791.  The state court's conclusion that Petitioner
was not deprived of effective assistance of counsel is not contrary to, or an unreasonable
application of, *Strickland* and related Supreme Court decisions.

### D.  The Prosecutor's Closing Arguments

Petitioner alleges that the trial prosecutor unfairly commented on the prosecution
witnesses' credibility, denigrated the defendants' testimony, and referred to Petitioner as a liar.
Petitioner further alleges that his trial attorney was ineffective for failing to object to the
prosecutor's remarks.

The trial court reviewed Petitioner's prosecutorial-misconduct claim for "plain error"
because Petitioner did not object to the prosecutor's remarks during trial.  The trial court stated
that the remarks were a response to defense counsel's closing argument and were part of a larger
argument explaining why the evidence did not support the defendants' theories.  The trial court

24

*Donaldson v Palmer*, 08-11144

concluded that the prosecutor's comments were not prejudicial and did not result in an unfair trial.

### 1.  Clearly Established Federal Law

Prosecutors may not use improper methods calculated to produce a wrongful conviction, *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)), but "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the prosecutor's remarks infected the trial with such unfairness as to make the resulting conviction a denial of due process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Courts in this Circuit employ a two-prong test for determining whether prosecutorial misconduct rendered a trial fundamentally unfair.  *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006).  First, a court must ask whether the prosecutor's conduct or remarks were improper.  *Id*. at 516.  Second, if the conduct or remarks were improper, a reviewing court must weigh the following four factors to determine whether the improper acts were sufficiently flagrant to warrant reversal:  "(1) whether the evidence against the defendant was strong[;] (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally."  *Id*. (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)).  The Court cannot reverse a conviction on the basis of a prosecutor's improper or even universally condemned remarks unless the "'statements were so flagrant as to render the entire

25

*Donaldson v Palmer*, 08-11144

trial fundamentally unfair.'"  *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (quoting

*Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006)).

### 2.  Application

Petitioner contends that the prosecutor vouched for prosecution witnesses by claiming

that the witnesses were honest, candid, and forthright.  (Tr. Mar. 3, 2003, at 114, 129).  The

prosecutor described the defendants' testimony as a story, a fabrication, and even a "pack of

lies."  (*Id*. at 129, 139, 143, 146-47, 177.)

The federal Court of Appeals for the Sixth Circuit explained in *United States v. Reid*, 625

F.3d 977, 982 (6th Cir. 2010), that

> "Improper vouching occurs when a prosecutor supports the credibility of a
> witness by indicating a personal belief in the witness's credibility thereby placing
> the prestige of the office of the United States Attorney behind that witness."
> [*United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)].  This generally
> involves either blunt comments asserting personal belief, or comments that imply
> special knowledge of facts not before the jury or the credibility or truthfulness of
> the witness.  *Id*.

The prosecutor's comments that prosecution witnesses were honest, candid, and

forthright was improper vouching.  *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992)

(cited with approval in *United States v. Henry*, 545 F.3d 367, 380 (6th Cir. 2008)).  "An

improper statement of personal belief, however, is not per se reversible error.  The court must

find that the improper statement was flagrant enough to 'warrant reversal.'"  *Henry*, 545 F.3d at

380 (citations omitted).

The prosecutor's comments about the prosecution witnesses being candid and forthright,

while improper, likely did not mislead the jury or prejudice Petitioner, given the strength of the

*Donaldson v Palmer*, 08-11144

evidence against him.  A trial court, moreover, can generally correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence." *United States v. Crosgrove*, __ F.3d __, __, No. 08-4650, 2011 WL 922253, at *16 (6th Cir. Mar. 18, 2011) (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)).  The trial court instructed Petitioner's jury that the attorneys' statements and arguments were not evidence, but were meant to help the jurors understand the attorneys' theories.  (Tr. Mar. 3, 2003, at 14, 180.)  Thus, the prosecutor's improper vouching does not warrant reversal of Petitioner's convictions.

The prosecutor's remarks that the defendants' testimony was fabricated is problematic, because "[i]t is unprofessional for counsel to express a personal belief or opinion in the truth or falsity of any testimony."  *United States v. Collins*, 78 F.3d 1021, 1039-40 (6th Cir. 1996).  A prosecutor, however, "must be given leeway to argue reasonable inferences from the evidence. Where there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying."  *Id*. at 1040; *see also Crosgrove,* 2011 WL 922253, at *15 ("A prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments.") (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

Petitioner and his co-defendant testified at their joint trial.  They denied knowing each other before their arrest, and they denied committing the robberies.  Because at least one victim from each robbery identified Petitioner as one of the robbers, it was not flagrant conduct to suggest that Petitioner fabricated his testimony.

27

*Donaldson v Palmer*, 08-11144

To summarize, although the prosecutor's remarks were deliberately made and were improper to some extent, the remarks were not flagrant and did not reach the level of reversible error. Furthermore, Petitioner has failed to show that objecting to the prosecutor's remarks would have changed the outcome of his case. Therefore, he cannot show that his attorney's failure to object to the remarks prejudiced him, as required by *Strickland*. *Seymour v. Walker*, 224 F.3d 542, 556 (6th Cir. 2000).

### E. Failure to Suppress the Photographic Line-up

Three of the four robbery victims (Charles Giles, John Pierce, and Eugene Szymanski) identified Petitioner in a photographic array before trial. Petitioner's photograph was one of six photographs in the array. He claims that the trial court deprived him of due process by not suppressing evidence that he was identified at the photographic show-up. He contends that he was in custody and available for a live line-up and that there was no basis for showing his photograph to the victims instead of placing him in a live line-up. Petitioner also alleges that the photographic array was suggestive because he was the only man wearing a red shirt and braided hair like one of the robbers. Finally, alleges Petitioner, there was no independent basis for the victims' identification of him.

The Michigan Court of Appeals reviewed Petitioner's claim on the merits and concluded that the circumstances justified the use of a photographic line-up because there were no suitable persons available for a live line-up. The Court of Appeals found it unnecessary to decide whether there was an independent basis for identifying Petitioner at trial, because, in its opinion,

28

*Donaldson v Palmer*, 08-11144

the trial court's finding – that the identification procedure was not unduly suggestive – was supported by the evidence.

### 1.  Use of Photographs in Place of a Live Line-up

The argument that photographs should not have been used because Petitioner was in custody is based on state law.  *See People v. Kurylczyk*, 443 Mich. 289, 298 n.8; 505 N.W.2d 528, 532 n. 8 (1993).  There is no constitutional right to a line-up, *United States v. Robertson*, 606 F.2d 853, 857 (9th Cir. 1979); *United States v. Brown*, 699 F.2d 585, 593 (2d Cir. 1983), and "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

### 2.  Suggestiveness of the Array

Petitioner nevertheless alleges that the photographic array was suggestive because he was the only man wearing a red shirt and braided hair, as described by the robbery victims.  The trial court held a hearing on this issue and stated at the conclusion of the hearing that, even though Petitioner was the only person with braided hair, his hair did not appear to be braided in the photograph.  It looked straight, short, and combed back, similar to the other men's hair.  The trial court also opined that Petitioner looked approximately the same age as the other men in the array, except for one man who looked a little older, and that Petitioner's complexion appeared to be the same color as that of the other men.  (Tr. Dec. 6, 2002, at 67-68.)

"There is no requirement that a suspect in a lineup be surrounded by people identical in appearance," *Tavarez v. LeFevre*, 649 F. Supp. 526, 530 (S.D. N.Y. 1986), and an exhibit to the habeas petition supports the trial court's factual determination that Petitioner did not stand out in

29

*Donaldson v Palmer*, 08-11144

the array.  *See* Pet. for Writ of Habeas Corpus, Appendix A (photo array).  The Court therefore concludes that the photographic array was not unduly suggestive.

### 3.  The Independent Bases for the Identification

Even if the Court had concluded that the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 384 (1968), Petitioner would not be entitled to relief.  The question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).  "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *Id.* at 199-200.  "If an identification is reliable, it will be admissible even if the confrontation was suggestive."  *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) (citing *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977), and *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000)).

Charles Giles testified at the pretrial hearing on this issue that he had two to three minutes to observe the robbers and that the lighting in the restaurant was "pretty bright." Although the robbers wore panty hose over their heads, he could see the shape of Petitioner's head and chin, his eyebrows, the size of his eyes and forehead and even his braids.  Giles' degree of attention was good, in part, because he was curious about what Petitioner intended to do.

30

*Donaldson v Palmer*, 08-11144

Giles claimed that he would have picked Petitioner's photograph from the array even if his photograph did not depict him in a red shirt with braided hair, because he recognized Petitioner's facial features.  It took him just seconds to identify Petitioner in the array.  (Tr. Dec. 6, 2002, at 10-17, 29, 31, 36.)

Giles testified at trial that he had been a security officer and was required to observe people.  Even though the robbers were wearing pantyhose over their faces, their features were visible because they were standing close to him.   He took particular notice of Petitioner because he was wearing shorts and a fur-trimmed jacket.  The temperature  was too cool for shorts, and not cold enough for the jacket.  (Tr. Feb. 24, 2003, at 81-84.)  He viewed the photographic array on the same day as the robbery.  (Tr. Dec. 6, 2002, at 23-24.)

As for the Gold Coast robbery, John Pierce testified that the robber did not have a stocking cap over his face and that he saw Petitioner's face two times during the robbery.  He recognized Petitioner from an encounter with him about a week earlier.  He claimed that he identified Petitioner as soon as he saw his picture in the photo array.  He recognized Petitioner's face, and his braids had nothing to do with Pierce's identification of him.  (Tr. Feb. 25, 2003, at 9, 23-24, 33-37.)

Eugene Szymanski did not recognize Petitioner from a prior encounter, but he also testified that the robber did not have anything over his face.  He observed Petitioner for about five minutes and it was Petitioner's facial features, as well as his clothing, which led him to identify Petitioner in the photo array.  He viewed the photographic array on the day after the

*Donaldson v Palmer*, 08-11144

crime, and he was certain of his identification of Petitioner as the man who shot him.  (*Id*. at 55, 63, 70, 72-74.)

To summarize, the victims who identified Petitioner had a good opportunity to view the robber at the time of the crime, and, as previously explained, their descriptions of him were good.  They were paying attention, and they were certain of their identifications.  The length of time between the crime and the confrontation was a matter of one day at most.

The Court concludes that there was an independent basis for the victims' identification of Petitioner.  Therefore, even if the pretrial identification procedures were suggestive, the identification testimony at trial was reliable and admissible.

### F.  Appellate Counsel

Petitioner alleges that his appellate counsel was ineffective for not raising all his claims on direct review and for not investigating and obtaining evidence to support his theory about the Gold Coast robbery.

### 1.  Clearly Established Federal Law

The *Strickland* standard applies to claims about appellate counsel.  *Webb v. Mitchell,* 586 F.3d 383, 398 (6th Cir. 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)), *cert. denied*, __ U.S. __, 130 S. Ct. 2110 (2010).  The "deficient performance" prong of the two-part *Strickland* test requires showing that appellate counsel made an objectively unreasonable decision to raise other issues in place of Petitioner's claims.  *Thompson v. Warden, Belmont Corr. Inst*., 598 F.3d 281, 285 (6th Cir. 2010).  In other words, Petitioner must show that his claims are clearly stronger than the issues counsel presented to the Michigan Court of Appeals.

32

*Donaldson v Palmer*, 08-11144

*Id*. (quoting *Webb*, 586 F.3d at 399) (quoting *Robbins*, 528 U.S. at 285, 288).  To demonstrate

"prejudice," Petitioner must show a reasonable probability that he would have prevailed on

appeal but for his attorney's failure to raise all his claims on appeal.  *Id*. (citing *Robbins*, 528

U.S. at 285).

### 2.  Failure to Raise Claims

Petitioner alleges that his appellate attorney was ineffective for failing to acquire

evidence regarding the Gold Coast robbery and for failing to request an evidentiary hearing on

his claim about trial counsel's failure to investigate and locate evidence.  Petitioner also alleges

that appellate counsel was ineffective for failing to argue that the prosecutor's comments during

closing arguments were improper and that Petitioner was sentenced on the basis of facts, which

he did not admit and which were not determined by a jury beyond a reasonable doubt.

The Court has determined that trial counsel's omissions did not amount to

constitutionally ineffective assistance.  The Court has also determined that the prosecutor did not

knowingly suppress or destroy material evidence favorable to the defense, and that the

prosecutor's comments were not flagrant.  Thus, appellate counsel was not ineffective for failing

to raise those issues on appeal.

As for Petitioner's claim that he was sentenced on facts, which he did not admit and

which the prosecutor did not prove beyond a reasonable doubt, this claim is based on

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact

that increases the penalty for a crime beyond the prescribed statutory maximum must be

33

*Donaldson v Palmer*, 08-11144

submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In

*Blakely*, the Supreme Court stated that the "statutory maximum" for purposes of *Apprendi* "is the

maximum sentence a judge may impose solely on the basis of the facts reflected in the jury

verdict or admitted by the defendant."   *Blakely*, 542 U.S. at 303 (emphasis omitted).

Both the Michigan Supreme Court and the United States Court of Appeals for the Sixth

Circuit have determined that *Blakely* does not apply to Michigan's sentencing scheme.  *See*

*Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *People v. Drohan*, 475 Mich. 140, 164;

715 N.W.2d 778, 791 (2006).  Therefore, appellate counsel was not ineffective for failing to

raise Petitioner's *Blakely* and *Apprendi* claim on direct appeal.

"[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit,"

*Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), and there is not a reasonable probability

that, but for appellate counsel's failure to raise all of Petitioner's claims, Petitioner would have

prevailed on appeal.  Consequently, appellate counsel was not ineffective, and the trial court's

conclusion – that Petitioner was not deprived of effective assistance of appellate counsel – was

not contrary to, or an unreasonable application of, *Strickland*.

## IV.  CONCLUSION

The state courts' adjudications of Petitioner's claims did not result in unreasonable

applications of the facts.  Nor were the state court decisions "so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.  "[E]ven a strong case for relief does

not mean the state court's contrary conclusion was unreasonable."  *Id.* at 786 (citing *Lockyer v.*

34

*Donaldson v Palmer*, 08-11144

*Andrade*, 538 U.S. 63, 75 (2003)).   Accordingly, the petition for writ of habeas corpus [Dkt. #1], is **DENIED**.

Reasonable jurists, however, could debate the Court's assessment of Petitioner's claims about trial and appellate counsel's failure to investigate and obtain physical evidence regarding the Gold Coast robbery.  Those claims deserve encouragement to proceed further.  The Court therefore grants a certificate of appealability on claim five (ineffective assistance of trial counsel), as supplemented during these proceedings, and on the related portion of claim seven regarding appellate counsel.  "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El v. Cockrell,* 537 U.S. 322,  338 (2003).

Finally, as previously noted, Petitioner's motion to file instanter his supplemental brief [Dkt. #40] is **GRANTED,** and his motion for immediate release from custody [Dkt. #43] is **DENIED**.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  March 25, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 25, 2011, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary

35